

FILED'06 SEP 08 16:01 USDC-ORE
FILED'06 JUL 20 11:39 USDC-ORE

**REDACTED**

Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| UNITED STATES OF AMERICA, | CR 06-60071-AA |
|---|---|
| Plaintiff, | PETITION TO ENTER PLEA OF GUILTY, CERTIFICATE OF COUNSEL AND ORDER ENTERING PLEA |
| vs. | |
| Kendall Tankersley | |
| Defendant. | |

The defendant represents to the Court:

1. My name is __Kendall Tankersley__. I am __29__ years old. I have completed education through ~~the ___ grade and some college~~ __Bachelor of Science degree__. I request that all proceedings against me be in my true name.

2. My attorneys ~~is~~ are __Lee Foreman & Shaun McCrea__.

Page 1 - Petition to Enter Plea of Guilty, Certificate of Counsel, And Order Entering Plea

5

3. My attorney and I have discussed my case fully. I have received a copy of the Indictment or Information. I have read the Indictment or Information, or it has been read to me, and I have discussed it with my attorney. My attorney has counseled and advised me concerning the nature of each charge, any lesser-included offense(s), and the possible defenses that I might have in this case. I have been advised and understand that the elements of the charge(s) alleged against me to which I am pleading "GUILTY" are as follows: ~~Count 1~~ See Insert (Conspiracy) ~~that the defendant (1) and other agreed (2) to commit Arson and destruction of an energy facility in the Dist. of Oregon and elsewhere.~~

~~Count 2~~ 4. I know that if I plead "GUILTY," I will have to answer any questions that the judge asks me about the offense(s) to which I am pleading guilty. I also know that if I answer falsely, under oath, and in the presence of my attorney, my answers could be used against me in a prosecution for perjury or false statement.

5. I am not under the influence of alcohol or drugs. I am not suffering from any injury, illness or disability affecting my thinking or my ability to reason. I have not taken any drugs or medications within the past seven (7) days.

6. I understand that conviction of a crime can result in consequences in addition to imprisonment. Such consequences include deportation, or removal from the United States, or denial of naturalization, if I am not a United States citizen; loss of eligibility to receive federal benefits; loss of certain civil rights (which may be temporary or permanent depending on applicable state or federal law), such as the right to vote, to hold public office,

**Page 2 - Petition to Enter Plea of Guilty, Certificate of Counsel, And Order Entering Plea**

Insert to Paragraph 3

Count 1: Conspiracy to Commit Arson and Conspiracy to Destroy an Energy Facility in violation of Title 18, United States code, Section 371.

Count 2: Attempted Arson - U.S. Forest Industries, in violation of Title 18, United States Code, Section 844(i) and (2).

Count 3: Arson - U.S. Forest Industries, in violation of Title 18, United States Code, Section 844(i) and (2).

Count 1.  In the District of Oregon, between October 1996, and October, 2001, I conspired with two or more persons to commit offenses against the United States as more specifically set forth as to Count 1 in the document entitled Attachment 1, which is attached hereto and made a part hereof.

Counts 2-3.  In the District of Oregon, I and other individuals unlawfully and willfully caused, or aided and abetted the malicious damaging and destroying by means of fire and an explosive the destruction of buildings and other real and personal property used in interstate commerce and used in activities affecting interstate commerce, as follows:

> Count 2 - Attempted Arson - U.S. Forest Industries, Medford, Jackson County, Oregon December 22, 1998, property of U.S. Forest Industries, property used in interstate commerce and affecting interstate commerce.
>
> Count 3 - Arson - U.S. Forest Industries, Medford, Jackson County, Oregon December 27, 1998, property of U.S. Forest Industries, property used in interstate commerce and affecting interstate commerce.

and to possess a firearm; and loss of the privilege to engage in certain occupations licensed by the state or federal government.

7.  I know that I may plead "NOT GUILTY" to any crime charged against me and that I may persist in that plea if it has already been made. I know that if I plead "NOT GUILTY" the Constitution guarantees me:

> a.  The right to a speedy and public trial by jury, during which I will be presumed to be innocent unless and until I am proven guilty by the government beyond a reasonable doubt and by the unanimous vote of twelve jurors;
>
> b.  The right to have the assistance of an attorney at all stages of the proceedings;
>
> c.  The right to use the power and process of the court to compel the production of evidence, including the attendance of witnesses in my favor;
>
> d.  The right to see, hear, confront, and cross-examine all witnesses called to testify against me;
>
> e.  The right to decide for myself whether to take the witness stand and testify, and if I decide not to take the witness stand, I understand that no inference of guilt may be drawn from this decision; and
>
> f.  The right not to be compelled to incriminate myself.

**Page 3 - Petition to Enter Plea of Guilty, Certificate of Counsel, And Order Entering Plea**

8. I know that if I plead "GUILTY" there will be no trial before either a judge or a jury and that I will not be able to appeal from the judge's denial of any pretrial motions I may have filed concerning matters or issues not related to the court's jurisdiction.

9. In this case I am pleading "GUILTY" under Rules 11(c)(1)(A) **and/or** 11(c)(1)(B). My attorney has explained the effect of my plea under Rule 11(c)(1)(A) to be as follows:

> I plead guilty under Rule 11(c)(1)(A), pursuant to a Plea Agreement whereby the prosecutor has promised to dismiss other charges against me; therefore, at or before sentencing, the judge must either accept the Plea Agreement or allow me to withdraw my plea.

My attorney has explained the effect of my plea under Rule 11(c)(1)(B) to be as follows:

> I plead guilty under Rule 11(c)(1)(B); therefore, although the judge will consider the recommendations and agreements of both the prosecution and the defense attorneys concerning sentencing, the judge is not obligated to follow those recommendations or agreements. If the judge imposes a sentence different from what I expected to receive under the terms of my plea agreement with the prosecutor, I do not have a right to withdraw my plea

10. I know the maximum punishment which can be imposed upon me for the crimes to which I am pleading guilty is ___20___ years imprisonment and a fine of $ ___250,000___. I also know that there is a mandatory minimum sentence of ___5___ years.

Page 4 - Petition to Enter Plea of Guilty, Certificate of Counsel, And Order Entering Plea

11.   I know that the judge, in addition to any other penalty, will order a special assessment as provided by law in the amount of $100.00.

12.   I know that if I am ordered to pay a fine, and I willfully refuse to pay that fine, I can be returned to court, where the amount of the unpaid balance owed on the fine can be substantially increased by the judge and I can be imprisoned for up to one year.

13.   My attorney has discussed with me the Federal Sentencing Guidelines. I know The Guidelines are advisory, not mandatory. I also know the sentencing judge, in determining the particular sentence to be imposed, must consider those factors set forth in Title 18, United States Code, Section 3553(a), including, but not limited to: the nature and circumstances of the offense, my own history and characteristics, the goals of sentencing (punishment, deterrence, protection, and rehabilitation), and the sentencing range established by the advisory Guidelines. If my attorney or any other person has calculated a guideline range for me, I know that this is only advisory, and is only one of the factors that the judge will consider in making a final decision as to what sentence will be imposed. I also know that a judge may not impose a sentence greater than the maximum sentence referred to in paragraph (10) above.

14.   I know from discussion with my attorney that, under the Federal Sentencing Guidelines, if I am sentenced to prison I am not entitled to parole. I will have to serve the full sentence imposed except for any credit for good behavior that I earn. I can earn credit for good behavior in prison at a rate of up to 54 days for each year of imprisonment served.

**Page 5 - Petition to Enter Plea of Guilty, Certificate of Counsel, And Order Entering Plea**

Credit for good behavior does not apply to a sentence of one year or less.

15.  I know that if I am sentenced to prison, the judge will impose a term of supervised release to follow the prison sentence. During my supervised release term I will be supervised by a probation officer according to terms and conditions set by the judge. In my case, a term of supervised release can be up to _2-3_ years. If I violate the conditions of supervised release, I may be sent back to prison for up to _$ 41 mos_ ~~years~~.

16.  I know that in addition to or in lieu of any other penalty, the judge can order restitution payments to any victim of any offense to which I plead guilty. I am also informed that, for certain crimes of violence and crimes involving fraud or deceit, it is mandatory that the judge impose restitution in the full amount of any financial loss or harm caused by an offense. If imposed, the victim can use the order of restitution to obtain a civil judgment lien. A restitution order can be enforced by the United States for up to twenty (20) years from the date of my release from imprisonment, or, if I am not imprisoned, twenty (20) years from the date of the entry of judgment. If I willfully refuse to pay restitution as ordered, a judge may resentence me to any sentence which could originally have been imposed.

17.  On any fine or restitution in an amount of $2,500 or more, I know that I will be required to pay interest unless that fine or restitution is paid within fifteen (15) days from the date of the entry of judgment.

18.  If I am on probation, parole, or supervised release in any other state or federal case, I know that by pleading guilty in this court my probation, parole or supervised release

**Page 6 - Petition to Enter Plea of Guilty, Certificate of Counsel, And Order Entering Plea**

may be revoked and I may be required to serve time in that case, which may be consecutive, that is, in addition to any sentence imposed on me in this court.

19. If I have another case pending in any state or federal court, I know that my Plea Petition in this case does not apply to my other case(s), and that I can be faced with consecutive sentences of imprisonment.

20. My plea of "GUILTY" is based on a Plea Agreement that I have made with the prosecutor. That Plea Agreement is attached hereto and incorporated herein. I have read or had read to me the Plea Agreement, and I understand the Plea Agreement.

21. No officer or agent of any branch of government (federal, state or local) or anyone else has promised or suggested that I will receive a lesser term of imprisonment, or probation, or any other form of leniency if I plead "GUILTY." I understand that I cannot rely on any promise or suggestion made to me by a government agent or officer which is not stated in writing, or which is not presented to the Judge in my presence in open court at the time of my entry of my plea of guilty.

22. My plea of "GUILTY" is not the result of force, threat, or intimidation.

23. I hereby request that the judge accept my plea of "GUILTY" to the following count:

24. I know that the judge must be satisfied that a crime occurred and that I committed that crime before my plea of "GUILTY" can be accepted. With respect to the charge(s) to which I am pleading guilty, I represent that I did the following acts and that the

Page 7 - Petition to Enter Plea of Guilty, Certificate of Counsel, And Order Entering Plea

following facts are true:

Count 1-3   As set forth in Attachment 1 to the Plea Agreement tendered to the Court.

25.  I offer my plea of "GUILTY" freely and voluntarily and of my own accord and with a full understanding of the allegations set forth in the Indictment or Information, and with a full understanding of the statements set forth in this Petition and in the Certificate of my attorney that is attached to this Petition.

SIGNED by me in the presence of my attorney, after reading (or having had read to me) all of the foregoing pages and paragraphs of this Petition on this 20th day of July, 2006.

_____
Defendant

**Page 8 - Petition to Enter Plea of Guilty, Certificate of Counsel, And Order Entering Plea**

## CERTIFICATE OF COUNSEL

The undersigned, as attorney for defendant Kendall Tankersley, hereby certifies:

1.  I have fully explained to the defendant the allegations contained in the Indictment or Information in this case, any lesser-included offense(s), and the possible defenses which may apply in this case.

2.  I have personally examined the attached Petition To Enter Plea of Guilty And Order Entering Plea, explained all its provisions to the defendant, and discussed fully with the defendant all matters described and referred to in the Petition.

3.  I have explained to the defendant the maximum penalty and other consequences of entering a plea of guilty described in paragraphs (6)-(20) of the Petition, and I have also explained to the defendant the applicable Federal Sentencing Guidelines.

4.  I recommend that the Court accept the defendant's plea of "GUILTY."

SIGNED by me in the presence of the above-named defendant, and after full discussion with the defendant of the contents of the Petition To Enter Plea of Guilty on the 20th day of July, 2006.

_____
Attorney for Defendant

## ORDER ENTERING PLEA

I find that the defendant's plea of GUILTY has been made freely and voluntarily and not out of ignorance, fear, inadvertence, or coercion. I further find the defendant has admitted facts that prove each of the necessary elements of the crime(s) to which the defendant has pled guilty.

IT IS THEREFORE ORDERED that the defendant's plea of GUILTY be accepted and entered as requested in this Petition and as recommended in the Certificate of defendant's attorney.

DATED this 20 of July, 2005, in open court.

_____
U.S. District Court Judge



U.S. Department of Justice
Karin J. Immergut
United States Attorney
District of Oregon
701 High Street                              Office: (541) 465-6771
Eugene, OR 97401-2798                        Fax: (541) 465-6582

July 19, 2006

Lee Foreman
Attorney at Law
150 East 10th Avenue
Denver, Colorado 80203

      Re:   <u>United States v. Kendall Tankersley</u>   Case No. 06-60071-1-AA
            Plea Agreement - **REDACTED VERSION**

Dear Mr. Foreman:

1. **Parties/Scope**: This plea agreement is between this United States Attorney's Office for the District of Oregon (USAO) and defendant, and thus does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority except as otherwise identified in this agreement. This agreement does not apply to any charges other than those specifically mentioned herein.

2. **Charges and Penalties**: Defendant agrees to plead guilty to Counts 1 through 4 of the Information as follows:

   **Count 1: Conspiracy to Commit Arson and Destruction of an Energy Facility of the United States** in violation of Title 18, United States Code, Section 371. The maximum sentence is 5 years imprisonment, a fine of $250,000, a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

   **Count 2: Attempted Arson – U.S. Forest Industries** in violation of Title 18, United States Code, Section 844(i). The maximum sentence is 20 years imprisonment, a mandatory minimum of 5 years, a fine of $250,000, a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

   **Count 3: Arson – U.S. Forest Industries**, in violation of Title 18, United States Code, Section 844(i). The maximum sentence is 20 years imprisonment, a mandatory minimum of 5 years, a fine of $250,000, a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

   Defendant agrees to pay the fee assessment applicable to each of the above counts by the time of entry of guilty plea or explain to the court why this cannot be done. Defendant will pay mandatory restitution as ordered by the court.

3. **Factual Basis**: The factual basis for each count is attached hereto and by this reference incorporated herein as Attachment 1, which defendant agrees the USAO can prove beyond a reasonable doubt.

Lee Foreman
U.S. v. Tankersley - Plea Agreement
July 19, 2006
Page 2

4.  **Dismissal/No Prosecution**: The USAO will move to dismiss the Second Superseding Indictment at the time of sentencing. The USAO further agrees not to bring additional charges against defendant for offenses relating to arson, conspiracy, conspiracy to commit arson, or destruction of an energy facility in which defendant may have been involved directly or indirectly up to and including December 11, 2005, which took place in the District of Oregon.

5.  **Resolution of Sentencing Issues**: In addition to waiving the right to a jury trial on the issue of guilt, defendant knowingly and voluntarily agrees that sentencing issues in this case need not be alleged in a grand jury indictment, proven to a trial jury, or proven beyond a reasonable doubt. Defendant also knowingly and voluntarily consents to judicial fact-finding and resolution of any and all sentencing issues. Defendant and government agree that the guidelines calculations should be derived from the United States Sentencing Commission Guidelines Manual with effective date of November 1, 2000. The defendant and government understand and agree that the court will consider 18 U.S.C. §3553(a) in determining the appropriate sentence in this case.

6.  **Guideline Enhancement**: The USAO will recommend the terrorism guideline enhancement found in U.S.S.G. §3A1.4 because the felony offenses either involved or were intended to promote a federal crime of terrorism.

7.  **Minimal Role**: The USAO will recommend that defendant receive a 4 level reduction for minimal role in the offense under the provisions of U.S.S.G. §3B1.2(a).

8.  **Acceptance**: The USAO agrees to recommend a 3 level reduction for acceptance of responsibility if defendant's offense level is 16 or greater; otherwise a 2 level reduction applies pursuant to U.S.S.G. §3E1.1. The USAO reserves the right to change or omit this recommendation if defendant, between plea and sentencing, commits any new or additional violation of law, obstructs or attempts to obstruct justice or acts inconsistently with acceptance of responsibility.

9.  **USAO Sentence Recommendation**: The sentence to be recommended by the government in this case is based on the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide a just and fair sentence for this defendant in relation to and in comparison with all of the defendant's co-conspirators.

10. **Waiver of Appeal/Post-Conviction Relief**: Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds unless the sentence imposed exceeds the statutory maximum, the court imposes an upward departure pursuant to Part 5K of the Sentencing Guidelines, or the

Lee Foreman
U.S. v. Tankersley - Plea Agreement
July 19, 2006
Page 3

court exercises its discretion under 18 U.S.C. § 3553(a) to impose a sentence which exceeds the advisory guideline range. Should defendant seek an appeal, despite this waiver of that right, the USAO may take any position on any issue on appeal. Defendant also waives the right to file a motion pursuant to 28 U.S.C. § 2255 to set aside the conviction and sentence, except on grounds of ineffective assistance of counsel, newly discovered evidence, or a retroactive change in the applicable guidelines or statute.

11. **Court Not Bound**: The court is not bound by the recommendations of the parties or of the Presentence Report (PSR) writer. Because this agreement is made under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, defendant may not withdraw any guilty plea or rescind this plea agreement if the court does not follow the agreements or recommendations herein.

12. **Full Disclosure/Reservation of Rights**: The USAO will fully inform the PSR writer and the court of the facts and law related to defendant's case. Except as set forth in this agreement, the parties reserve all other rights to make sentencing recommendations and to respond to motions and arguments by the opposition.

13. **Breach of Plea Agreement**: If defendant breaches the terms of this agreement, or commits any new violations of law between signing this agreement and sentencing, the USAO is relieved of its obligations under this agreement, but defendant may not withdraw any guilty plea.

14. **REDACTED**

15. **REDACTED**

16. **Total Agreement**: This letter states the full extent of the agreement between the parties. There are no other promises or agreements, express or implied. If defendant accepts this offer, please sign and attach the original of this letter to the Petition to Enter Plea.

    Sincerely,

    KARIN J. IMMERGUT
    United States Attorney


    KIRK A. ENGDALL
    Assistant U.S. Attorney

I have read this agreement carefully and reviewed every part of it with my attorney. I understand the agreement and voluntarily agree to it. I am satisfied with the legal assistance

Lee Foreman
U.S. v. Tankersley - Plea Agreement
July 19, 2006
Page 4

provided to me by my attorney.

_____        _____
Date                              KENDALL TANKERSLEY
                                  Defendant

     I represent defendant as legal counsel. I have carefully reviewed every part of this agreement with defendant. To my knowledge defendant's decision to enter into this agreement is an informed and voluntary one.

_____        _____
Date                              LEE FOREMAN
                                  Attorney for Defendant

ATTACHMENT 1

<u>United States vs. Kendall Tankersley</u>

**Count 1: Conspiracy to Commit Arson and Destruction of an Energy Facility of the United States**

Beginning in October 1996 and continuing through October 2001, in the District of Oregon and elsewhere, Josephine Sunshine Overaker, Kevin Tubbs, Stanislas Gregory Meyerhoff, Daniel Gerard McGowan, Joseph Dibee, Rebecca Rubin, Chelsea Dawn Gerlach, Kendall Tankersley, Suzanne Savoie, Jonathan Christopher Mark Paul, Darren Todd Thurston, Nathan Fraser Block, Joyanna L. Zacher, Jacob Jeremiah Ferguson, Jennifer Lynn Kolar, William C. Rodgers and other persons, willfully and knowingly conspired and agreed to maliciously damage or destroy, or attempt to damage or destroy, by means of fire, buildings, vehicles and other personal and real property owned in whole or in part or possessed by, or leased to, the United States or any department or agency thereof, and or used in interstate commerce or in any activity affecting interstate commerce; and to knowingly and willfully damage and attempt to damage the property of an energy facility of the United States involved in the transmission of electricity.

The conspiracy was accomplished by the defendant and the others named above, when certain of the defendants and others joined together in a group they called the "Family." This "Family" was what is commonly known as a "cell" of groups and movements publicly named and described by certain of the defendants and others as the Earth Liberation Front (ELF), the Animal Liberation Front (ALF), and other names.

The primary purposes of the conspiracy were to influence and affect the conduct of government, commerce, private business and others in the civilian population by means of force, violence, sabotage, destruction of property, intimidation and coercion, and by similar means to retaliate against the conduct of government, commerce and private business. To achieve these purposes, some of the conspirators committed and attempted to commit acts potentially dangerous to human life and property that constituted violations of the criminal laws of the United States and of individual states.

Some of the defendants and others targeted for arson, buildings, vehicles and other real and personal property owned, possessed, and leased by the United States and its departments and agencies while others targeted for arson, buildings, vehicles and other real and personal property used in interstate commerce and in activities affecting interstate commerce; and still others targeted energy facilities of the United States for damage and destruction.

The defendant and others conducted and participated in meetings to plan arsons of the targeted sites. Several of these meetings were called "Book Club" meetings by the defendants and others and occurred at distant locations. The "Book Club" meetings covered subjects such as lock-picking, computer security, reconnaissance of targets,

and manufacture of timing devices to set off improvised incendiary devices.

Some of the defendants and others conducted research and surveillance of sites targeted for arson and discussed their actions among themselves by using code words, code names, and nicknames. The phrase "direct action" was used to include arsons and other acts of destruction.

In preparation for the actions, some of the conspirators designed and constructed destructive devices which functioned as incendiary devices to ignite fires and destroy the targets for arson and provided transportation to the locations of the arson targets.

During the course of the "direct actions" the defendant and others dressed in dark clothing, wore masks and gloves and otherwise disguised their appearance. Some of the conspirators acted as "lookouts" to ensure secrecy as the crimes were carried out, and some placed destructive devices and accelerants at sites targeted for arson and ignited or attempted to ignite the devices and accelerants.

In some of the arsons and attempted arsons, certain of the defendants and others painted messages on the walls of the targets, including "Earth Liberation Front," "ELF" and related names and statements concerning the purposes of the crimes.

After the arsons and attempted arsons, the defendants and others destroyed, buried, hid and otherwise disposed of physical evidence used in the commission of the crimes and thereafter publicized and promoted the results of the fires by means of written press releases and communiques which attributed the arsons to the Earth Liberation Front (ELF), the Animal Liberation Front (ALF) and related groups, and stated the purpose of the arsons.

Before, during and after the arsons, attempted arsons, and destruction of an energy facility, some of the defendants and others agreed among themselves never to reveal to law enforcement authorities or to anyone else outside "the Family" the identity of the conspirators and participants in the arsons and attempted arsons and agreed among themselves to conceal or destroy any evidence connecting them to the arsons and attempted arsons. Some of the defendants and others possessed and/or used false identification documents in order to conceal their true identities and after the arsons and attempted arsons, some of the defendants and others fled and secreted themselves in foreign countries in order to avoid detection and arrest by law enforcement authorities in the United States.

**Count 3: Attempted Arson – U.S. Forest Industries:**

Prior to December 27, 1998, Kendall Tankersley, Kevin Tubbs and Jacob Ferguson traveled to 2611 Whittle Avenue, Medford, Oregon, in the District of Oregon, to perform a "dry run" reconnaissance at the U.S. Forest Industries building for the intended purpose of committing arson at that facility. During the "dry run", Kendall

Tankersley was dropped off by Kevin Tubbs and Jacob Ferguson at a paint store near the U.S. Forest Industries building. Kendall Tankersley then ran across Highway 62 and hid in a ditch.

Kendall Tankersley watched for vehicles traveling near the U.S. Forest Industries building and was prepared to warn Kevin Tubbs and Jacob Ferguson by two way radio when any vehicles were in the area.

After Kevin Tubbs and Jacob Ferguson had completed their tasks during the "dry run," Kendall Tankersley was picked back up by Kevin Tubbs and Jacob Ferguson and all returned to Eugene, Oregon.

Kendall Tankersley, Kevin Tubbs and Jacob Ferguson then decided on a specific date to perform an arson at U.S. Forest Industries. Tubbs and Ferguson determined that they would need a fourth person to complete the arson.

The night before or the morning of the attempted arson, on or about December 22, 1998, Kendall Tankersley, and Jacob Ferguson walked to a grocery store in the Whiteaker neighborhood in Eugene, Oregon where they were picked up by Kevin Tubbs and Rebecca Rubin in a van driven by Kevin Tubbs. Tankersley, Tubbs, Ferguson and Rubin then traveled together to Medford, Oregon.

In the van were several white, five-gallon buckets filled with fuel which had been placed inside black plastic garbage bags. These fuel filled buckets were components of the incendiary devices which were used to commit the arson.

Upon their arrival in Medford, Oregon, Tankersley was dropped off at a paint store near the U.S. Forest Industries building. Tankersley then ran across Highway 62 and took up her position as a lookout for the others as she hid in a ditch. Tankersley had a two way radio with which she was able to communicate with Tubbs, Ferguson and Rubin. If Tankersley needed to use the radio to contact the others, she had been instructed to sound as though she was a taxi cab company employee.

After the incendiary devices had been placed at the U.S. Forest Industries building by Jacob Ferguson and Rebecca Rubin, Kendall Tankersley was advised via two way radio to go back to the paint store to be picked up. Once picked up in the van driven by Tubbs, Tankersley and the others discarded the shoes they had been wearing during the arson into a river on their return trip back to Eugene, Oregon.

Kendall Tankersley and Jacob Ferguson then went to the public library in Eugene and looked at the newspapers to see if there was any coverage regarding the arson at U.S. Forest Industries. There was no newspaper account of any arson or fire at U.S. Forest Industries.

Sometime later, Kendall Tankersley received a telephone call from Jacob Ferguson in which he advised her that the incendiary devices had failed to function.

Ferguson asked Tankersley to drive back to Medford and try to retrieve the devices.

Thereafter Kendall Tankersley and another person traveled to Medford and went to U.S. Forest Industries. Tankersley and the other person parked their vehicle in front of U.S. Forest Industries where Tankersley observed that the incendiary devices were still at that location. The fuel filled buckets were not removed from their previous placement near the U.S. Forest Industries building.

**Count 4: Arson – U.S. Forest Industries:**

After Christmas, 1998, Kendall Tankersley received another telephone call from Jacob Ferguson whereupon Ferguson asked Tankersley to meet him in Ashland, Oregon. Tankersley traveled to Ashland, Oregon in a red pickup truck and met with Jacob Ferguson who was with his infant son. Tankersley and Ferguson gathered materials to prepare a new timing mechanism for the incendiary device which remained at U.S. Forest Industries. Ferguson and Tankersley readied themselves to return to U.S. Forest Industries to once again commit the arson.

On December 27, 1998, Tankersley dropped off the pickup truck at a parking lot and Tankersley and Ferguson's son drove with Ferguson in his Subaru to a neighborhood near U.S. Forest Industries. Ferguson got out of the Subaru and walked over to the U.S. Forest Industries building, at 2611 Whittle Avenue, Medford, Oregon, in the District of Oregon, and set the newly constructed timing mechanism on the buckets of fuel. When Ferguson returned to the vehicle, Tankersley drove Ferguson and his son back to Ashland. Along the way, Tankersley and Ferguson heard dispatch reports regarding the fire at U.S. Forest Industries on a police scanner they had with them.

After the arson, Tankersley dropped Ferguson off to get the pickup truck. They then drove to the Cedar Lodge Motel in Dunsmuir, California. Tankersley, with Ferguson's infant son, registered under the false name of Teresa Capelli and listed two as the number of people who would be using the room as two. Ferguson subsequently sneaked into the room and spent the night with Tankersley and his son.

The following day, Tankersley traveled back to Eugene, Oregon, and went to the public library where she read about the arson at U.S. Forest Industries. Tankersley then went over to the residence of Kevin Tubbs where she was shown a copy of the communique regarding the arson by Tubbs and Jacob Ferguson. Tankersley and Ferguson referred to the U.S. Forest Industries arson as having occurred at "Grandma's."

The U.S. Forest Industries building at 2611 Whittle Avenue, Medford, Jackson County, the District of Oregon, which destruction by fire was attempted on or about December 22, 1998 and which was destroyed by fire on December 27, 1998, was a building and other real and personal property used in interstate commerce and was used in activities affecting interstate commerce.